UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>532 MADISON AVENUE GOURMET FOODS, INC. d/b/a Smiler's Deli,<br><br>　　　　　　　　　　　　　　　Debtor. | <u>NOT FOR PUBLICATION</u><br><br>Chapter 11 (Subchapter V)<br><br>Case No. 24-11092 (MG) |

**MEMORANDUM OPINION AND ORDER
OVERRULING OBJECTION TO CLAIM NO. 5 WITHOUT PREJUDICE**

*A P P E A R A N C E S:*

PICK & ZABICKI LLP
*Attorneys for Debtor*
369 Lexington Avenue, 12th Floor
New York, NY 10017
By:　Douglas J. Pick, Esq.
　　　Eric C. Zabicki, Esq.

LAW OFFICES OF TAE H. WHANG, LLC
*Attorneys for Creditor NewBank*
185 Bridge Plaza North, Suite 201
Fort Lee, NJ 07024
By:　Tae Hyun Whang, Esq.

**MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE**

　　　Pending before the Court is the contested claim objection ("Claim Objection," ECF Doc. # 37) of 532 Madison Avenue Gourmet Foods, Inc. d/b/a Smiler's Deli ("Debtor") to proof of claim no. 5 filed by NewBank in the secured amount of $6,688,679.49 ("NewBank Claim"). The Claim Objection seeks to reduce and/or reclassify the NewBank Claim to $180,325.02 and "limit its secured claim to no more than $200,850," the amount of the Debtor's assets. Annexed to the Claim Objection are (i) the NewBank Claim as Exhibit A (ECF Doc. # 37-1); (ii) the Temporary Forbearance Agreement, dated November 18, 2023 as Exhibit B ("Temporary Forbearance

Agreement," ECF Doc. # 37-2); (iii) a "Business Activity Statement "from NewBank on account of the $600,000 loan (discussed below) that covers January 1, 2022 through May 14, 2024 as Exhibit C ("Business Activity Statement," ECF Doc. # 37-3); (iv) a copy of the Debtor's Schedule A/B as Exhibit D (ECF Doc. # 37-4); and (v) the declaration of Ryung Hee Cho, president of the Debtor, in support of the Claim Objection ("Cho Decl.," ECF Doc. # 37-5).

NewBank filed a response (the "NewBank Response," ECF Doc. # 45). Annexed to the NewBank Response are (i) the NewBank Claim as Exhibit A (ECF Doc. # 45-2); (ii) Uniform Commercial Code Filing Data Report from the New York State Department of State as Exhibit B (ECF Doc. # 45-3); (iii) an appraisal report of the Debtor's furniture, fixtures, and equipment as Exhibit C (ECF Doc. # 45-4); (iv) the Debtor's September 2024 monthly operating report as Exhibit D (ECF Doc. # 45-5); and (v) May 14, 2024 email correspondence concerning the Business Activity Statement as Exhibit E (ECF Doc. # 45-6).

On November 11, 2024, the Debtor filed a reply to the Response (the "Debtor's Reply," ECF Doc. # 49). Annexed to the Debtor's Reply as Exhibits A, B, and C are copies of certain email correspondence between the Debtor and counsel to NewBank spanning July 2024 through November 2024.

For the reasons discussed below, the Claim Objection is **OVERRULED WITHOUT PREJUDICE**. Based on the Claim Objection and the Response, the Court concludes that this is a contested matter that requires the matter to be resolved on a full evidentiary record.

## I. BACKGROUND

### A. Relevant Case History

The Debtor is a New York business corporation engaged in the operation of a restaurant/cafe/deli located at 532 Madison Avenue, New York, New York 10022 (the

"Premises"). (Claim Objection ¶ 1.) On June 20, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code.[1] (*See* ECF Doc. # 1.)

Schedule A/B lists the following as the Debtor's assets as of the Petition Date: cash ($6,000), bank account balances ($14,100), accounts receivable ($10,000), perishable and non-perishable inventory ($20,000), office equipment and furnishings ($650), a promissory note receivable ($150,000). (Claim Objection ¶ 6.) The Debtor lists its assets as having a total estimated value of $200,850, which excludes a $40,000 security deposit held by the Debtor's landlord. (*Id.*)

A bar date order was entered on July 25, 2024 (ECF Doc. # 18) that established (i) September 9, 2024 as the last date for non-governmental units to file proofs of claim ("General Bar Date") and (ii) December 17, 2024 as the last date for governmental units to file proofs of claim ("Governmental Bar Date").

### B. The NewBank Claim

#### 1. Relevant Background

On July 27, 2012, NcwBank extended a U.S. Small Business Administration loan to the Debtor in principal amount of $600,000 ("SBA Loan"). (Claim Objection ¶ 2.)

On October 28, 2013, the Debtor executed certain "Unconditional Guarantees" in favor of NewBank with respect to other SBA loans which NewBank had extended to non-debtor entities 470 W 42 Gourmet Food, Inc., Seventh Avenue Fine Foods Corp., and Treehaus 736 Inc. ("SBA Guarantees"). (*Id.*) The Debtor indicates that the SBA Guarantees guaranteed a total principal amount of $4,650,000. (*Id.*)

---

[1] The Debtor is a repeat filer. The previous case—case no. 18-13117 (MEW)—was dismissed on October 9, 2019.

3

On November 18, 2023, the Debtor executed the Temporary Forbearance Statement, which specifies an amount of $204,325.02 outstanding on account of the SBA Loan as of November 17, 2023. (*Id.* ¶ 3.) The Debtor asserts this amount, as of April 11, 2024, has been further reduced to $180,325.02 as reflected in the attached Business Activity Statement. (*Id.*)

### 2. The NewBank Claim

On July 25, 2024, NewBank filed the NewBank Claim against the Debtor in the total amount of $6,688,679.49, comprised of: (i) $626,788.01 on account of the SBA Loan; and (ii) $6,061,891.48 on account of the SBA Guarantees, all alleged to be secured by valid, enforceable, and perfected security interests on substantially all of the Debtor's prepetition assets. (*Id.* ¶ 7.) Such assets include, but are not limited to equipment, fixtures, inventory, accounts, instruments, chattel paper, general intangibles, documents, deposit accounts, and investment property, whether then owned or thereafter acquired, together with all replacements, accessions, proceeds and products thereof. (*Id.*)

Annexed to the NewBank Claim are copies of four state judgments, one of which corresponds to the SBA Loan and three of which correspond to the three SBA loans subject to the SBA Guarantees. (*See generally* NewBank Claim.) Affixed to each judgment is a chart breakdown of outstanding amounts owed on account of each judgment plus interest that when added together result in the total amount asserted under the NewBank Claim. (*Id.* at 4, 30, 65, 101.) The amounts are as follows:

- $626,788.01 on account of the SBA Loan;

- $2,770,701.35 on account of the SBA Guarantee relating to non-debtor 470 W 42 Street Gourmet Food Inc.;[2]

---

[2] NewBank asserts that one of the entities whose SBA loan the Debtor guaranteed, 470 W 42 Street Gourmet Food Inc., has an outstanding amount of $2,770,701.35. 470 W 42 Street Gourmet Food Inc. had a bankruptcy case before Judge Sean Lane (Case No. 17-12801). (*See* NewBank Claim at 30–31.)

4

- $1,048,174.21 on account of the SBA Guarantee relating to non-debtor Seventh Avenue Find Foods Corp.; and

- $2,243,015.92 on account of the SBA Guarantee relating to Treehaus736 Inc. ("Treehaus736").

(*Id.*)

### C. The Claim Objection

The Claim Objection takes issue with each component of the NewBank Claim. Each is discussed in turn.

#### 1. The SBA Loan

The Debtor argues that the portion of the NewBank Claim on account of the SBA Loan should be reduced to $180,325.02, alleging that it is the correct amount outstanding as of the Petition Date. (*Id.* ¶ 11.) In support, the Debtor argues that a reduction is appropriate in light of payments the Debtor made to NewBank following the execution of the Temporary Forbearance Agreement. (*Id.*) This amount corresponds with the figure set forth in the Business Activity Statement attached to the Claim Objection (ECF Doc. # 37-3) that specifies a "current balance" of $180,325.02 on account of the $600,000 SBA Loan as of May 14, 2024. (*Id.*, Ex. C.)

The Debtor further argues that the amounts asserted on account of the SBA Guarantees are "overstated" and should also be reduced. (*Id.* ¶ 12.) Specifically, the Debtor was "made aware that NewBank had transferred two of the three SBA loans that it had extended to the non-debtor borrowers to the SBA." (*Id.*) In exchange for the transfer, the Debtor asserts that NewBank was "paid amounts by the SBA on account of the SBA's guaranty of the loan obligations," which NewBank appears to have failed to credit against amounts it believes the Debtor owes. (*Id.*) Therefore, NewBank's filing of a secured claim on account of amounts owed in connection with these loans, the Debtor argues, is improper because "NewBank has no right, title, and/or interest in the SBA loans that were transferred to the SBA." (*Id.* ¶ 13.)

5

Accordingly, the Debtor asserts that any claim asserted by NewBank on account of the SBA Guarantees must be "limited to the amount with respect to the one SBA loan which it did not transfer to the SBA." (*Id.*) The Debtor further notes that NewBank has not, to date, provided the Debtor with the amounts repaid by the SBA. (*Id.*)

2. Requested Relief

Based on the foregoing, the Debtor requests that NewBank (i) "amend its claim" to reflect payments it received from the SBA; (ii) correct the balance actually owed by the Debtor to $180,325.02; (iii) limit the NewBank Claim to no more than $200,950; and (iv) grant such other and further relief as may be just and proper. (*Id.* ¶ 14.)

**D. The NewBank Response**

NewBank opposes the relief sought and asks that the Court deny the Claim Objection. (NewBank Response at 6.) It indicates that its secured claim arises out of the SBA Loan to the Debtor and the SBA Guarantees of three SBA loans to related companies the Debtor guaranteed. (*Id.* ¶ 2.) NewBank maintains that it holds a first lien position on all the Debtor's business assets with each of the Debtor's obligations to NewBank secured by the following collateral:

> All Business Assets Including But Not Limited to Purchase Money Security Interest in all Inventory, Chattel Paper, Accounts, Equipment and General Intangibles.
>
> In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:
>
> (A) All accessions, attachments, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.
>
> (B) All products and produce of any of the property described in this Collateral section.

6

    (C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment of other disposition of any of the property described in this Collateral section.

    (D) All proceeds (including insurance proceeds) from the sale, destruction, loss or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

    (E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

(*Id.* ¶¶ 3, 8 (quoting the security agreement from the Debtor to NewBank); *see also id.*, Ex. B (containing a copy of a Uniform Commercial Code "Filing Data Report" from the New York State Department of State that reflects that NewBank has a first lien).)

       The NewBank Response walks through the supporting documentation affixed to the NewBank Claim that makes clear that the proof of claim is predicated on amounts outstanding on four state court judgments, including accrued interest, relating to the SBA Loan and the SBA Guarantees. (*See id.* ¶¶ 4–7.) With respect to the SBA Loan, NewBank highlights that the chart calculating amounts due under the relevant judgment includes $101,250.00 in payments received from February 28, 2020 to June 14, 2024. (*Id.* ¶ 4.) NewBank notes that $92,307.60 of that amount was applied to interest while $8,942.40 was applied to the judgment. (*Id.*) Similarly, with respect to the guaranteed SBA loan of Treehaus 736, the amount outstanding accounts for the $121,617.00 in payments from May 22, 2019 through March 2, 2021. (*Id.* ¶ 7.) Of that amount, $96,390.75 was applied to interest while $25,226.25 was applied towards the judgment. (*Id.*)

NewBank takes issue with the arguments the Debtor has set forth. Each is addressed in turn.

1. **The Debtor's Assets Subject to NewBank's Security Agreement Exceed the Amounts Stated in Schedule A/B**

NewBank indicates that, as of September 30, 2024, a total of $430,103.16 of the Debtor's assets are subject to NewBank's security agreement. (*Id.* ¶ 13.) The breakdown is as follows:

| | |
|---|---|
| $90,650.00 | Amount stated in Schedule A/B |
| $150,000.00 | Promissory Note from 28 UP Inc. |
| $12,950.00 | Furniture, Fixtures, and Equipment |
| $239,503.16 | Cash on Hand (Proceeds from Sale of Inventory) |
| $493,103.16 | **TOTAL** |

(*Id.*) In addition to the $90,650.00 set forth in Schedule A/B, NewBank further notes that (i) the Debtor is the owner and holder of a promissory note in the amount of $150,000.00 payable by 28 UP Inc., and (ii) Schedule A/B does not include furniture, fixtures, and equipment that NewBank believes holds a fair market value of $12,950.00. (*Id.* ¶¶ 9–11.) As support for the appraised value of the furniture, fixtures, and equipment, NewBank includes a copy of a third-party appraisal report dated October 17, 2024, prepared by Caspert Management Co. Inc. (*Id.* ¶ 11.) Finally, NewBank notes that the Debtor's September 2024 monthly operating report discloses that the Debtor holds $239,503.16 in cash on hand from the "sale of inventory and the sale of food that was made from inventory," all of which serves as security.[3] (*Id.* ¶ 12.)

2. **NewBank Argues the Debtor's Allegations Are False**

NewBank argues that the Debtor "falsely alleges" that the amount due under the SBA Loan is only $204,325.02 per the language set forth in the Temporary Forbearance Agreement and rejects that it should be reduced further to $180,325.02 on account of payments made. (*Id.*

---

[3] NewBank further notes that no cash collateral agreement or order has been entered in this case. (Claim Objection ¶ 12.) The Debtor's Reply indicates that the parties have been in discussion with respect to the Debtor's use of cash collateral. (*See* Debtor's Reply, Ex. C.)

8

¶¶ 14–15.) NewBank states this is so because, after accounting for accrued interest and payments already made, its calculations reflect that $626,788.01 remains outstanding on account of the judgment relating to the SBA Loan. (*Id.* ¶ 14.)

Accepting the Debtor's assertion, NewBank contends, would disregard the language in the Temporary Forbearance Agreement that provides that $204,325.02 is for principal only and does not include "***accrued interest, default interest, late charges and legal expenses through the date of full payment to NewBank***," which should be accounted for. (*Id.* (emphasis added) (quoting the Temporary Forbearance Agreement).) Moreover, NewBank argues that its calculations of amounts owed on account of the SBA Loan already factors in payments made. (*Id.*)

NewBank also rejects the Debtor's contention that amount due on account of the SBA Loan should be further reduced to $180,325.02. (*Id.* ¶ 15.) It argues that the Business Activity Statement the Debtor relies upon to show that only $180,325.02 remains outstanding was provided in response to the Debtor's request for loan statements from 2022 for tax returns purposes. (*Id.*) NewBank states that the statement serves only as proof that "all payments from the Debtor were applied to principal and not to interest." (*Id.*) However, NewBank explains that the Business Activity Statement was provided as evidence as to the amount owed by the Debtor on the judgment. (*Id.*)

Lastly, NewBank argues that accepting the Debtor's arguments would also result in the Court disregarding the other three SBA loans and the total amounts due thereunder. (*Id.* ¶ 14.)

## II. LEGAL STANDARD

Section 502 of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of [the Bankruptcy Code], is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502. Bankruptcy Rule 3007(c) and 3007(d) provide that, under certain circumstances, or with Court approval, more than one claim may be joined in a single objection. FED. R. BANKR. P. 3007(c)–(d).

As set forth in Bankruptcy Rule 3001(f), a proof of claim executed and filed in accordance with Bankruptcy Rule 3001 shall constitute *prima facie* evidence of the validity and amount of claim. *See In re Residential Cap.*, 501 B.R. 531, 538 (Bankr. S.D.N.Y. 2013); *In re Vanegas*, 290 B.R. 190, 193 (Bankr. D. Conn. 2003) (citing Bankruptcy Rule 3001(f) and holding that the evidence submitted by the debtor was insufficient to overcome the validity and amount of bank's proof of claim); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 n.13, 553 (Bankr. S.D.N.Y. 2000) (citing Bankruptcy Rule 3001(f) in analysis of debtors' objection to former tenant's proof of claim and granting partial summary judgment with respect to the objection where there were no material facts in dispute).

To receive the benefit of *prima facie* validity, however, "the proof of claim must set forth the facts necessary to support the claim." *In re Marino*, 90 B.R. 25, 28 (Bankr. D. Conn. 1988) (citations and internal quotation marks omitted) (holding that claimant's proof of claim was not entitled to the presumption of *prima facie* validity because it did not set forth the necessary facts); *see also* FED. R. BANKR. P. 3001(c)(1) (requiring claimant to provide documentation where claim is based on a writing). "Failure to attach the documentation required by Rule 3001 will result in the loss of the *prima facie* validity of the claim." *In re Minbatiwalla*, 424 B.R. 104, 112 (Bankr. S.D.N.Y. 2010) (citations omitted).

10

Overall, "[a]n objecting party 'bears the initial burden of production and must provide evidence showing the claim is legally insufficient' under 11 U.S.C. § 502." *In re Lehman Bros. Holdings, Inc.*, 519 B.R. 47, 53–54 (Bankr. S.D.N.Y. 2014) (quoting *In re Arcapita Bank B.S.C.(c)*, 508 B.R. 814, 817 (S.D.N.Y. 2014)). A party objecting to the proof of claim must only provide evidence sufficient to negate the *prima facie* validity of the claim by refuting one or more of the facts in the filed claim. *See In re Waterman S.S. Corp.*, 200 B.R. 770, 774–75, 777 (Bankr. S. D.N.Y. 1996) (reopening discovery into asbestos claims due to insufficient information upon which to determine validity of claims); *see also In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992); *In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 Civ. 2229 (DC), 2010 WL 234827, at *3 (S.D.N.Y. Jan. 22, 2010) (same); *In re Adelphia Commc'ns Corp.*, Case No. 02-41729 (REG), 2007 WL 601452, at *5 (Bankr. S.D.N.Y. Feb. 20, 2007); *Rockefeller*, 272 B.R. at 539 (same).

Once this occurs, "the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *In re WorldCom, Inc.*, No. 02-13533 (AJG), 2005 WL 3832065, at *4, *9 (Bankr. S.D.N.Y. 2005) (citing Bankruptcy Rule 3001(f) and holding that claimant did not meet its burden to prove validity of anticipatory breach and unjust enrichment claims, but that further evidence was needed to assess the merits of lack of good faith claim) (quoting *Allegheny*, 954 F.2d at 173–74); *see also In re St. Johnsbury Trucking Co.*, 206 B.R. 318, 323, 328 (Bankr. S.D.N.Y. 1997) (citing Bankruptcy Rule 3001(f) and allowing claim where debtor failed to refute any of the material facts in proof of claim). Generally, the claimant must prove the claim and not sit back while the objector attempts to disprove it. *See In re Bennett,* 83 B.R. 248, 252 (Bankr. S.D.N.Y. 1988) (holding that debtor

11

presented sufficient evidence to rebut the *prima facie* validity of claimant's claim and that claimant failed to prove claim by a preponderance of credible evidence).

### III.    DISCUSSION

The Debtor has not offered sufficient evidence to overcome the *prima facie* validity of NewBank's proof of claim, which includes documentation to support the amounts sought. *See Marino*, 90 B.R. at 28 (stating that a proof of claim must set forth the facts necessary to support a claim to have *prima facie* validity); FED R. BANKR. P. 3001(f) (providing that a "proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim"). Such documentation includes copies of the relevant state court judgments, copies of the notes underlying the SBA Loan and SBA Guarantees, the relevant security agreements and UCC financing statements (and any related amendments), the relevant guarantee agreements, and charts detailing NewBank's calculation of amounts outstanding under each judgment that accounts for accrued interest and any payments made. (*See generally* NewBank Claim; FED R. BANKR. P. 3001(d) ("If a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected.").)

The Debtor, instead, offers solely a copy of the Temporary Forbearance Agreement that specifies an outstanding principal of $204,325.02 on account of the SBA Loan, a Business Activity Statement that the Debtor argues updates the amount to $180,325.02 as of April 11, 2024, the Debtor's Schedule A/B, and certain email correspondence.[4] (*See* Claim Objection; Debtor's Reply.) Nothing in the Claim Objection, the Debtor's Reply, or the documentation provided addresses the state court judgments that NewBank argues form the basis for its proof of

---

[4] The Business Activity Statement spans the period of January 1, 2022 through May 14, 2024 and lists an outstanding balance of $180,325.02 as of April 11, 2024.

claim and the approximately $6.7 million amount it asserts. Moreover, the Temporary Forbearance Agreement and the Business Activity Statement pertain solely to the SBA Loan and any outstanding principal without accounting for any accrued interest. The Debtor also does not address NewBank's calculation of amounts owed or identify any issues with how the figures were reached.

As for the SBA Guarantees, the Debtor does not dispute their existence but indicates that the total principal amount is $4,650,000. (*See* Claim Objection ¶ 2.) Rather, the Debtor asserts that the NewBank Claim should be modified and reduced because it was "made aware that NewBank had transferred two (2) of the three (3) SBA loans" underlying the SBA Guarantees and, as a result of the transfer, was "paid amounts by the SBA on account of the SBA's guaranty of the loan obligations." (*Id.* ¶ 12.) However, the Debtor offers no evidence to support either contention and their validity cannot be verified. The Debtor also does not identify which of the two SBA loans were transferred and otherwise satisfied as to amounts due and owing to NewBank. Instead, the Debtor states only that "NewBank has not provided to the Debtor the amounts that it has been repaid by the SBA." (*Id.* ¶ 13.) Some discovery may be necessary to determine (i) whether and which SBA loans underlying the SBA Guarantees were transferred, and (ii) whether SBA paid NewBank to satisfy the transferred loans. The Debtor has not provided evidence sufficient to negate the *prima facie* validity of the claim. *See Waterman S.S.*, 200 B.R. at 744–45 (stating that the objecting party bears the burden of producing evidence sufficient to negate the *prima facie* validity of a filed claim by refuting one or more facts in the filed claim).

Therefore, based on the information provided, the Court concludes that Claim and Claim Objection raise a contested matter. Counsel should meet and confer and seek to reach agreement

13

on a Case Management and Scheduling Order, including a schedule for discovery and further proceedings, including, if necessary, an evidentiary hearing. Counsel shall submit a proposed Case Management and Scheduling Order using the template that appears on the Court's public website under my Chamber's Rules.

## IV. CONCLUSION

For the reasons discussed above, the Claim Objection is **OVERRULED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

Dated: November 12, 2024
      New York, New York

                                                **/s/ Martin Glenn**
                                                MARTIN GLENN
                                  Chief United States Bankruptcy Judge